## APPEAL OF EMILE SCHEPPERS ET AL.

[LEWIS ET AL. v. SCHEPPERS ET AL.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 9, 1889—Decided April 22, 1889.

Where an auditor, appointed to distribute a fund, found the facts upon conflicting evidence and recommended a decree logically proper as based upon his findings, it is error for the court below to reverse the decree without showing or attempting to show that the findings of fact were erroneous: in such case, the decree of the court below, having nothing to sustain it, will itself be reversed.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 136 January Term 1889, Sup. Ct.; court below, No. 373 June Term 1883, C. P. No. 3.

To the term and number in the court below as above stated, a scire facias sur mortgage was issued by Edwin M. Lewis, Frederick Collins, Alexander Whilldin and George Morrison Coates, trustees for Joseph H. Dunn, Charles B. Dunn and Robert M. Dunn and others, against Emile Scheppers, Edouard Scheppers and Francis Scheppers.

The mortgage was given by the defendants to secure certain bonds amounting to $450,000 made by them to various cestuis que trust. All the holders of the bonds received from the defendants satisfactory settlements except the Dunn Brothers. Before the cause came on for trial the defendants, with leave granted under § 14, act of April 3, 1851, P. L. 871, paid into court $9,150, the amount claimed by the Dunn Brothers, when the mortgage was satisfied of record by the trustees, and *Mr. Henry J. McCarthy* appointed auditor to distribute the fund.

From the evidence taken before the auditor it appeared that in 1873 the Scheppers Brothers were engaged in manufacturing woolen goods in Philadelphia, and engaged Benjamin Bullock's Sons to purchase for them 800,000 pounds of wool. On August 1st of that year they gave to Benjamin Bullock's Sons thirty promissory notes each for $5,000, maturing in January and February, 1874, taking the following receipt:

" Received, Philadelphia, August 1, 1873, of Scheppers Brothers their thirty promissory notes, each for five thousand dollars and maturing as follows: . . . . . aggregating in amount, one hundred and fifty thousand dollars for purchase of wool or to be protected by us at maturity.

$150,000.                    BENJAMIN BULLOCK'S SONS."

The Dunn Brothers were bankers doing business in Philadelphia. Benjamin Bullock's Sons employed these bankers to discount notes for them, and also borrowed money from them. At times they would leave promissory notes with Dunn Brothers to secure future advancements. On September 27, 1873, Benjamin Bullock's Sons made an assignment for the benefit of creditors. After the assignment it was found that

Statement of Facts.

Dunn Brothers had in their possession eight promissory notes made by the Scheppers Brothers to the order of Bullock's Sons and indorsed by the latter to the Dunn Brothers.

In November, 1873, Scheppers Brothers suspended, but their creditors allowed them an extension. In January, 1885, they were given a second extension. They finally executed the mortgage in suit and gave the bonds secured by it to their creditors. Dunn Brothers received bonds amounting to $5,800 for the balance claimed to be due on the notes held by them. Subsequently at a time when the Scheppers had paid 88 per cent of their indebtedness with interest at seven per cent, there was a third extension agreement, to which, however, the Dunn Brothers declined to become parties. About the time of this settlement Scheppers Brothers received from the book-keeper of Benjamin Bullock's Sons the following statement made to the latter by Dunn Brothers:

"DUNN BROTHERS, BANKERS,<br>
51 and 53 South Third st.,<br>
PHILADELPHIA, October 8, 1873.

"MESSRS. BENJ. BULLOCK'S SONS.

| Debits. | | | Credits. |
|---|---|---|---|
| 1873. | | | |
| Sept. 1. To cash, . . | $ | 200 | |
| " 25. " " . | | 1,500 | |
| | | $1,700 | |

We hold as collateral the following notes:

Glenham Co., Dec. 10,　$5,000.

Scheppers Bros., Feb'y 21, $5,000.

　　"　　　"　　　" 21, $5,000.

Indorsed by B. Bullock's Sons."

Scheppers Brothers claimed before the auditor that they owed nothing to the Dunn Brothers. They admitted that five of the notes had been discounted by Dunn Brothers, but contended that the sixth did not belong to them but had merely been left in their possession by Benjamin Bullock's Sons. As to the other two notes, the Scheppers claimed that they were held by Dunn Brothers only as collateral security for a loan of $1,500 made by them to Benjamin Bullock's Sons. They further contended that the dividends which the Dunn Brothers

had received upon the eight notes had more than repaid to
them their loan to Benjamin Bullock's Sons, and all other sums
the Scheppers were liable to pay, and that these facts were un-
known to them when the bonds and mortgage were given.

The auditor found, inter alia, as follows :

The auditor is of the opinion, and finds as a fact, that these
two notes for $5,000 each, over which part of the controversy
arises, represented originally in the hands of the Dunns a just
claim against the Scheppers of only $1,500, with interest from
September 25, 1873 ; that the notes at no time represented any
larger claim ; and that this sum of $1,500 with interest has
been paid in full by the Scheppers to the Dunns in the divi-
dends which the Dunns have received from the Scheppers,
these dividends having been rated and paid as if the Dunns
had been entitled to receive the face of the bonds.

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;

On August 20, 1873, there were in the possession of the
Dunns eight notes for $5,000 each. They were then held as
collateral security for a loan of $30,000. This loan was soon
taken up and paid by the Bullocks. Six of these notes for
$5,000 each, were then discounted by the Dunns and the other
two were held as collateral. The Dunns asserted that these
two were held as collateral for all the indebtedness of the Bul-
locks to them. Your auditor finds, however, that they were
held as collateral security for the sum of $1,500 only. On
September 12, 1873, the Dunns resold to the Bullocks two of
these six notes. On September 17, 1873, the Dunns bought
two more Scheppers' notes of the Bullocks, each for $5,000.
Afterwards, about the date of this purchase, to wit, September
17, 1873, the Dunns sold to the Tradesmen's Bank one of
these notes, and that note then finally passed out of the pos-
session and ownership of the Dunns. The result of this trans-
action was that at the time of the failure of the Bullocks,
September 27, 1873, the Dunns should have had in their pos-
session, as collateral security, two Scheppers' notes for $5,000
each, and only five notes which they had discounted. But
they also held one note to which they had no title whatever,
for which they had given nothing at all, and which was the
property of Bullock's Sons as against them, the Dunns, and

the possession of which they are entirely unable to explain; all of these notes, without exception, being notes issued by Scheppers Brothers expressly for the purpose of furnishing the Bullocks with funds with which to buy wool on commission for the Scheppers. The facts about this last note came to the knowledge of the Scheppers only in 1881. They had paid precisely the same amount of money upon it as they had paid upon the other notes; that is, they paid 88 per cent of the principal and interest at the rate of 7 per cent, and they are therefore entitled now to be credited with the amount paid upon this note on account of any liability on any other notes.

It will be seen, therefore, that for the purpose of this case and so far as concerns the right of Scheppers Brothers to the fund in court, it is of no consequence whether the two notes held against the loan of $1,500 be treated as general collateral, or as special collateral for the $1,500 loan, because, even if these notes are to be treated as general collateral, the Dunns have been largely overpaid, and the Scheppers are entitled to the fund. Nor is it a matter of any importance to the Scheppers whether the general collateral referred to be treated as covering only the said two notes, or as including also the other undiscounted note.

Upon so finding, the auditor recommended that the sum paid into court should be awarded to Scheppers Brothers. Dunn Brothers filed thirty-nine exceptions to the auditor's report, which exceptions were overruled by the auditor, and were subsequently argued before the court in banc, when the following opinion was delivered, REED, J:

But for the conclusion upon one branch of this controversy reached by the learned judge who tried the case of the Corn Exchange Bank, reported in 111 U. S., and but for the finding of the master upon the present issues, it would have seemed no easy matter to set up a plausible defence to the plaintiff's claim. What was decided by the Supreme Court of the United States to have been the error of the rulings below in the bank case was, we think, the same view which governed the master here, namely, that the contract which in this case is shown to have been made between the firm of Benjamin Bullock's Sons and Dunn Brothers was so far of an illegal and immoral char-

Opinion of Court below.

acter as to throw a doubt over the whole of plaintiff's contention.

We are supported by the authority of the highest court of appeal in the land, however, in the opinion that when the defendants gave Benjamin Bullock's Sons their accommodation notes, under a written agreement that the notes should be used by the latter "for the purchase of wool or to be protected by us" (i. e., the Bullocks) "at maturity," Joseph W. Bullock, acting for the firm, had every right to use them as collateral security for loans in the manner he did, when he deposited them with Dunn Brothers. The question as to what was the nature of the agreement which was made between Joseph W. Bullock and the Dunn Brothers is a plain one. That agreement was undoubtedly that all the notes deposited by Bullocks with the Dunns should stand as a continuing collateral security for any loans or discounts which the latter might make for the benefit of Benjamin Bullock's Sons while the deposit lasted; in this aspect of the case, every difficulty disappears and the conduct of the parties is natural and sensible; without such an arrangement, most of what was done exhibits no motive or reason, is without consistent explanation, and leads to no intelligent end.

The undisputed facts of the transaction are too strong to be affected by the contradictions, such as they are, between the statements made at the different times by Joseph W. Bullock or by the testimony of Mr. Emile Scheppers; the subsequent conduct of the defendants and of their counsel, during the long-drawn bankruptcy proceedings in the estate of Benjamin Bullock's Sons, gives confirmation to the assertions made by the Dunns, and the fact that the defendants did not know until a late point of time of the existence of the paper given by the Dunn Brothers to Joseph W. Bullock on October 8, 1873, does not change the result.

That paper, which states that Dunn Brothers held collateral notes of the Scheppers and of the Glenham Company for $15,000, as collateral security for a debt of Bullock's Sons to them of $1,700, refers plainly to the loan account, which, as a fact existed, and cannot, with any fairness, be interpreted to mean that the security then held by the Dunn Brothers was to stand for this purpose only, and should not protect a large

Opinion of Court below.

discount account on which the amount of the ultimate liability of the Dunns to the holders of the discounted paper must remain unascertainable for several months.

In the view we take of the relations between the Scheppers and the Bullocks, and between the latter and the Dunn Brothers, the surrender by the Dunns to Joseph W. Bullock of the Glenham notes, is an important step in the contracts under which the plaintiff's rights arise, and one which finally determined the latter in a way which agrees with all that had taken place before. It seems to us, also, that the third Scheppers note must be regarded as being in the same category as the other collateral notes held by the Dunn Brothers.

No question upon the general law of bankers' liens need be discussed, for in the present case there was an express contract, and apart from any estoppel or technical presumption, the conclusions of fact such as could be drawn by a jury are adequate to support plaintiff's case.

The exceptions to the master's report are therefore sustained, and a decree in favor of the plaintiff for the amount of the sum in court is directed to be submitted by counsel.

And now, November 10, 1888, this cause having been argued on exceptions to the auditor's report (sur distribution of money paid into court under a scire facias on a mortgage, under the act of assembly of April 3d, 1851, 871,) by counsel for the defendants and for the exceptants, and it appearing to the court that the amount paid into and now in court to satisfy the said debt (including interest to date) is $9,738.03 ; and it further appearing that the amount due by Scheppers Brothers on the said debt exceeds the said amount now in court: It is ordered and decreed that exceptions 1 to 24 inclusive, 27, 28, 30 to 34 inclusive, and 37 to 39 inclusive, of the Dunn Brothers, claimants, are sustained, and the whole amount in court at the date of this decree be paid to the claimants, Dunn Brothers.

Emile Scheppers and Edouard Scheppers thereupon took this appeal specifying that the court erred in sustaining the said exceptions and in entering said decree.

Mr. *Charles E. Morgan, Jr.*, and Mr. *John G. Johnson* (with them Mr. *Francis D. Lewis*), for the appellants.

*Mr. A. Sidney Biddle* (with him *Mr. George W. Biddle*), for the appellees.

OPINION, MR. CHIEF JUSTICE PAXSON:

If the findings of fact by the auditor in this case are correct, his conclusions follow logically. The learned judge below has reversed him in a brief opinion without showing, or attempting to show, that his findings of fact are erroneous. We do not feel at liberty to dispose of them in this summary manner.

The main contest arises over two notes of $5,000 each made by the appellants, and which are held by Dunn Brothers, bankers and appellees, and which they claim to hold as collateral for the general indebtedness to them of the firm of Benjamin Bullock's Sons. Upon this question the auditor says: " The auditor is of opinion, and finds as a fact, that these two notes of $5,000 each, over which part of the controversy arises, represented originally in the hands of the Dunns a just claim against the Scheppers of only $1,500, with interest from September 25, 1873; that the notes at no time represented any larger claim; and that this sum of $1,500, with interest, has been paid in full by the Scheppers to the Dunns in the dividends which the Dunns have received from the Scheppers, these dividends having been rated and paid as if the Dunns had been entitled to receive the face of the bonds."

The auditor further finds that whether the notes in controversy be treated as collateral merely for the said sum of $1,500, or as general collateral, the result is the same, as the appellees have been largely overpaid. In the face of this clear finding of fact by the auditor, not shown to be erroneous, it is idle to discuss the case further. There is nothing to sustain the decree of the court below.

> The decree is reversed at the costs of the appellees, and it is ordered that the fund in controversy be awarded to the appellants.