# Rockhill Iron & Coal Company, Appellant, v. Fulton County.

*Constitutional law—Title of statute—Taxation—Act of April* 19, 1889, *P. L.* 37.

The Act of April 19, 1889, P. L. 37, entitled "An act authorizing appeals from assessments of taxes in this commonwealth to the court of common pleas," is not defective in title, and is constitutional.

*Taxation — Appeals from tax assessments—Practice, C. P.—Acts of April* 19, 1889, *and June* 26, 1901, *P. L.* 601.

Under the act of April 19, 1889, the court of common pleas is bound to hear the evidence and find the facts on appeals to it from the decision of the county commissioners as to tax assessments; and under the act of June 26, 1901, the appellate courts on appeals to them in such cases cannot limit themselves merely to an inspection of record as on a certiorari, but must review the judicial action of the court below on the evidence disclosed by the record.

An order of the court of common pleas sustaining a tax assessment of $10.00 an acre on land as coal land, will be reversed where the evidence shows that other lands of the same character were assessed at $1.00 per acre, and two experienced engineers testify that they had carefully examined the lands and that while there were thin seams of coal in them, there was no workable coal, and that the lands were not coal lands, and had no value as such.

Argued June 3, 1902. Appeal, No. 16, May T., 1902, by plaintiff, from order of C. P. Fulton Co., June T., 1901, No. 62, sustaining decision of county commissioners on tax assessments in case of Rockhill Iron & Coal Company v. Fulton County. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Appeal from decision of county commissioners on tax assessment. Before McSWOPE, P. J.

The opinion of the Supreme Court states the case.

*Error assigned* was the order of the court.

*George A. Smith,* for appellant.—Under the act of assembly of April 19, 1889, the lands of the appellant cannot be assessed, for taxation, at a higher valuation than other lands of like char-

acter in the vicinity—" with due regard to the valuation and assessment of other real estate in the county."

In other words taxation must be uniform and fair. One man's property cannot be taxed higher than another's unless of greater value. Yet that is what has been done in this case, and for that we complain of the decree and judgment of the court below, and seek its reversal.

*John P. Sipes,* for appellee.—The act of 1889 is unconstitutional : Kister's Petition, 9 Pa. Dist. Rep. 64.

There is nothing before this court but the record : Rand v. King, 134 Pa. 641 ; Christner v. John, 171 Pa. 527 ; Diamond Street, 196 Pa. 259 ; Mauch Chunk v. Nescopeck, 21 Pa. 46 ; Kimber v. Schuylkill County, 20 Pa. 366 ; Silver v. Schuylkill County, 20 Pa. 369 ; Case of the Phila. & Trenton R. R. Co., 6 Wheat. 41 ; Holland v. White, 120 Pa. 228 ; Young's Petition, 9 Pa. 215 ; Hughes v. Kline, 30 Pa. 227.

On the merits of the case the judgment of the court below should be affirmed.

Opinion by Mr. Justice Dean, October 13, 1902 :

The plaintiff is the owner of a large body of land lying in the three counties of Fulton, Huntingdon and Bedford. The land in Fulton county amounts to about 4,000 acres made up of separate tracts adjoining each other. Altogether, there were twenty-four separate tracts valued and assessed for taxation in Fulton county. As to eight of these, no complaint is made ; as to the remaining sixteen, appellant alleges the valuation is grossly excessive and out of proportion to the valuation put upon other lands belonging to resident owners, of the same quality in the same county.

As to these sixteen tracts, appellant appealed from the action of the assessor to the board of county commissioners, who overruled the appeal; it then appealed, under the act of April 19, 1889, to the court of common pleas of Fulton county. That court, after hearing the parties, made this decree : " After a very careful examination of all the testimony taken on this hearing, we discover no sufficient reason to justify us in altering the assessment of the properties as made by the assessor of Wells township, and approved by the board of commissioners

and we, therefore, dismiss the appeal." From this decree, under the provisions of the Act of June 26, 1901, P. L. 601, the iron and coal company brings this appeal before this court.

As preliminary to a discussion of the questions involved, we are compelled to say, we have had but little if any aid from the court below. No opinion is filed; there is but a pro forma decree dismissing the appeal. Yet the constitutionality of the acts of 1889 and 1901 was attacked in the court below; and it was argued, that even if constitutional, both were subject to different and wholly conflicting interpretations. If the appeal to the common pleas raised the merits of the complaint, it was the duty of that court to rule on the competency or incompetency of the evidence, to specifically set out its findings of fact and conclusions of law, so that this court would have the case in an orderly shape for review; the duty of the learned court of common pleas in such a case, is not that of a clerk to the county commissioners, but that of a court, whose duty it is, to hear, deliberate and decide, and then make a proper record of its adjudication. As this record presents itself to us, we must take up the questions of law and fact de novo, without the advantage of the reasons and conclusions of the learned judge of the court below. The disapproval by this court of such a record, as the one before us, in Morgan's Appeal, 125 Pa. 561, Scheppers's Appeal, 125 Pa. 598, and Williams v. Concord Congregational Church, 193 Pa. 120, is pointedly applicable. True, in those cases the court reversed, without opinion filed, the findings of fact and conclusions of law by a master and auditor. But here the record is still more meager. It practically shows nothing of value to us but the first assessment by the township assessor.

First, as to the duty of the appellate courts on an appeal from the township assessor's valuation. The first act, that of April 15, 1834, authorized an appeal to the county commissioners from the valuation fixed by the assessors. For nearly seventy years, the uniform interpretation of this act has been, that it was the duty of the commissioners to hear and determine the facts and to revise the valuation according to the facts. Before the adoption of the present constitution, special acts for different counties were passed authorizing appeals from the valuation of the commissioners to the courts of common pleas. But no general

act was passed, until that of 1889. The provisions of that act, so far as they are material to our present purpose, are as follows:

"An act authorizing appeals from assessment of taxes in this commonwealth to the court of common pleas," provides: "That any owner of real estate or taxable property in this commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property may appeal from the decision of the county commissioners, or board of revision and appeal, to the court of common pleas of the county wherein such property is situated, and for that purpose may present to said court, or file in the prothonotary's office, within sixty days after the county commissioners or board of revision and appeal have held the appeals provided by law, and acted on said assessments and valuations, a petition signed by him, his agent or attorney, setting forth the facts in the case, and thereupon the said court shall proceed at the earliest convenient time to be by them appointed, of which notice shall be given to the county commissioners of the proper county, or to the board of revision and appeal of the proper city to hear the appeal, and the proofs in the case, and to make such orders and decrees touching the matter complained of as to the judges of said court may seem just and equitable, having due regard to the valuation and assessment made of other real estate in such county or city, the costs of the appeal and hearing to be apportioned or paid as the court may direct."

If there is one question more than another, in our system of self-government, which arouses the interest of the citizen, it is that of the imposition of taxes; it comes home to, and directly affects all classes; they will bear with equanimity high taxation for any reasonable governmental purpose; they will not submit to unjust taxation for any purpose. The injunction of the constitution is: "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." The moment taxes within the territorial limits of a county are not uniform on the same class of subjects, the nonuniformity results in injustice to the taxpayer whose valuation is placed above that of his neighbor; the imperative necessity for prompt payment gives the complaining taxpayer but one remedy, and that is through appeal to the

courts from the assessment or valuation; the very law which gives the appeal, directs immediate payment, and then refunding of the excess collected if the appeal be successful. He cannot resist or delay by litigation the tax collector, who attempts to levy what the taxpayer thinks an unjust tax. His one and only remedy against unjust and discriminating taxation is the one pointed out by the acts of assembly referred to. And we must say, that the legislature, in view of the absolute necessity of prompt payment, as well as the dissatisfaction and irritation caused by want of uniformity, was moved to make the remedy as ample as possible by allowance of these appeals.

We do not hesitate, therefore, to say, that considering the mischief and the remedy, the plain intent of the act of 1889, was to make it the duty of the court of common pleas to hear the evidence and find the facts, on appeals to it from the decision of the county commissioners.

We now come to the act of June 26, 1901, under which this appeal comes before this court. Its title is "An act authorizing appeals from the decisions of the various courts of common pleas, in assessment of taxes cases to the Supreme or Superior Court of this commonwealth." Then the 1st section enacts:

"That any owner of real estate or taxable property in this commonwealth may appeal from the judgment, order or decree of any court of common pleas, in any matter affecting the assessment of taxes upon his property, to the Supreme or Superior Court, in the same manner as appeals are taken in other cases to the said Supreme or Superior Court: Provided, however, that the said appeal shall not prevent the collection of taxes complained of; but in case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same."

The decisions of the courts of common pleas in "assessment of taxes cases" were made under the authority of the act of 1889, and the appeal here is from their decrees under that act. We must pass upon their findings of fact as well as their conclusions of law. From their local knowledge of the subject of taxation, as well as the advantage they will have in determining the credibility of the witnesses, their findings of fact, will necessarily have and should have great weight with us.

But our duty on review is not limited, as argued, to a mere inspection of the record as on a certiorari. It covers a review of the judicial action of the court below on an appeal to it under the act of 1889. True, this imposes a new and somewhat onerous burden upon us, but that is no reason for unduly circumscribing a plain legislative enactment. We cannot revise and cannot reduce the valuation without reviewing the findings of fact of the court below. That we proceed to do. It is conceded, that a fair valuation of these sixteen tracts of land uniform with other lands of the same character in the county would be $1.00 per acre, unless they are underlaid with coal; and that if underlaid with coal, they should be valued at $10.00, per acre, the value placed upon them by the county commissioners and the court below. They are wholly undeveloped by actual mining; the marketable timber once upon them, has long since disappeared, having been cut and marketed or destroyed by fire.

The township assessor, who valued the lands, testified, he had never gone upon them to view them for the purpose of fixing their valuation. He had no personal knowledge, as to whether they were coal lands, but had merely copied the valuation of former assessors from the assessment list. Farmers and others, not geologists or coal miners, testified that there were outcroppings of thin seams of coal upon some of the tracts.

The appellant called L. L. Logan, an educated geologist and trained mining engineer, who had spent about eight months in an examination of these lands; he explored thoroughly the surface; drilled a number of holes, taking out the core, through all the measures where the coal would be found if there. He testified that these sixteen tracts in Wells township were not coal lands and had no value as such. That while coal seams to the thickness of five or ten inches were found on them in some localities, there was not on them a single persistent workable seam of coal; that they were not of any higher value than other land of like character in the same township valued at $1.00 per acre. This witness had large practical experience in testing for coal and in mining in that region. J. W. Bischoff was an educated mining engineer; was engaged in mining for many years in that region; had examined thoroughly these

lands; saw the work of the drillers and examined the borings. He testified that there was no workable coal under them. There was other testimony to the same effect.

That these are not in any reasonable sense of the word "coal" lands is clear. The careful investigations by entirely competent men demonstrate this beyond doubt. The testimony of appellee is based on the mere supposition of witnesses having no exact knowledge of the subject; they could not see hundreds of feet into the ground; they assumed from slight outcroppings on contiguous lands, that these were coal lands, and so at one time did the owners; but the drill and pick demonstrated the mistake. It was not without reason that the assessors and county commissioners should have, at one time adopted the mistake of the owners; but their mistake now and that of the court below is, in stubbornly adhering to a manifest error. To have the valuation stand at $10.00 per acre, the appellant will be compelled to pay ten times its share and nine times more tax than its neighbors in the same county pay per acre on lands of the same value. This would be gross injustice and cannot be permitted. We are of opinion that the valuation of these sixteen tracts as described in the appeal should be reduced from $10.00 per acre to $1.00 and the taxes assessed accordingly, and therefore, adjudge that the same be done.

The John McKierman tract, supposed to contain 144 acres, is assessed in the lump at $1,000; we intend that this tract shall be included in the decree and be also assessed at $1.00 per acre.

We now advert briefly to the argument of appellee, that the act of 1889 authorizing appeals from the revision of valuation by the county commissioners to the court of common pleas is unconstitutional, because the subject is not clearly expressed in the title of the act. The title is, "An act authorizing appeals from assessments of taxes in this commonwealth to the court of common pleas." It is argued that the title is misleading; that the appeal allowed is not from the assessment made by the township assessor, but from the decision of the county commissioners revising his assessment. This is hypercritical; the assessment made by the assessor remains the assessment, no matter whether raised or lowered by the commissioners or the courts until final adjudication; it may become an altered as-

sessment at the final decree, but nevertheless it is still the assessment directed by law, although not in exact accord with the act of the first officer making it.   It is so understood and so called in both common and legal parlance, and no one can be misled by the title which so names the subject.   " The title must embrace the subject of the proposed legislation, but also express the same so clearly and fully as to give notice of the legislative purpose to those who may be especially interested therein : "  Road in Phœnixville Borough, 109 Pa. 44; Mt. Joy Boro. v. Lancaster, etc., Turnpike Co., 182 Pa. 581.   The revision by the commissioners is an assessment of the taxes according to the true valuation as fixed by them, just as an action of assumpsit remains the same, although damages may be reduced or enhanced by every tribunal to which an appeal is taken from an award of arbitrators to the common pleas, and then to the Superior or to this court.   The title could not have more plainly expressed the subject, unless it had been an index of the provisions of the act, which last, we have more than once decided, is not a constitutional requirement.   We believe the purpose of this act was to promote fair and impartial imposition of the public burdens, whether lands taxed are owned by residents or nonresidents of a county.   We will not on trivial technicalities frustrate that purpose, no matter how onerous may be the burden of review upon us.   The decree of the court below is reversed and it is directed that the assessment for taxation of the lands described in the appeal to the court of common pleas be made in accordance with this opinion.