## Meinig v. Miller et al., County Commissioners.

*Taxation — County taxes — Assessment—Appeal — Uniformity of assessments.*

1. Appellant's property was assessed for county purposes at $100,000. On appeal to court, on refusal of the county commissioners to lower the assessment, the evidence of its value ranged from $50,000 to $135,000. The ratio of assessment to value on other properties in the same locality was shown to be from 30 to 60 per cent.: *Held*, that the fair value of the property was $100,000, and that the assessment should be reduced to $50,000, in view of the rule that assessments must be uniform.

*Statutes—Construction—Taxation—Act of April 19, 1889.*

2. The Act of April 19, 1889, P. L. 37, concerning appeals from assessments for county purposes, provides as follows: "That any owner of real estate or taxable property in this Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal from the decision of the county commissioners:" *Held*, that appeals lie not only from the regular triennial assessment, but also from assessments in intermediate years.

Kister's Petition, 9 Dist. R. 64, not followed.

Appeal from county assessment. C. P. Berks Co., March T., 1923, No. 79.

*H. F. Kantner*, for appellant; *Adam B. Rieser*, County Solicitor, contra.

BIDDLE, P. J., 9th judicial district, specially presiding.—This is an appeal of E. Richard Meinig from the assessment for the year 1923 placed by the county commissioners on his property located in the Borough of Wyomissing. When he was notified that the property had been assessed at $100,000, he appealed on the appeal day to the county commissioners, and the matter was heard by them. They refused to lower the assessment, whereupon he took this appeal to this court under the Act of April 19, 1889, P. L. 37.

### Findings of fact.

1. The fair market value of the property of appellant at the time that this assessment was made was $100,000.

2. The ratio of assessment to market value in the Borough of Wyomissing is 50 per cent. for real estate similar to that of the appellant.

### Conclusions of law.

1. The court has jurisdiction of the present appeal.

2. The assessment of the appellant's property should be reduced from $100,000 to $50,000, in order that the rate of taxation against it may be uniform with that of similar real estate in the same community.

### Discussion.

The principal contention of the appellee in this case is in regard to the jurisdiction of the court, the county contending that the determination of the county commissioners is final and that the Act of April 19, 1889, P. L. 37,

under which this appeal was taken, applies only in the case of triennial assessments and not to assessments made in the years between triennial assessments.

In support of this position, the determination of the Court of York County, in Kister's Petition, 9 Dist. R. 64, is cited. That case unquestionably supports the contention of the appellee, and we have been unable to find another case, either in the lower courts or in the appellate courts, where the question has been considered, but with due respect to the views of the learned judge who decided that case, we are unable to agree with his conclusions or the reasoning upon which his conclusions are based.

An examination of the opinion in that case shows that he not only held that the Act of April 19, 1889, applied only to triennial assessments, but he also intimated his opinion that the act was unconstitutional on several grounds. Some years later the question of the constitutionality of the act was considered by the Supreme Court in the case of Rockhill I. & C. Co. *v.* Fulton County, 204 Pa. 44, where the reasons given by the Court of York County in the other case, upon which he based his opinion that the act was unconstitutional, were considered by the Supreme Court and were held to be untenable. In view of this, we think that his conclusion as to the application of the act is not entitled to as much weight as it would otherwise receive.

If we apply the reasoning of the Supreme Court in the case in 204 Pa., just mentioned, to the present case, we feel that the only logical conclusion that can be reached is that it was the intention of the legislature to give to property owners the right to appeal from assessments in the intermediate years as well as from the triennial assessments.

The language of the act itself is: "That any owner of real estate or taxable property in this Commonwealth, who may feel aggrieved by the *last or any future assessment* or valuation of his real estate or taxable property, may appeal from the decision of the county commissioners," etc. The italics in this case are ours.

The Supreme Court, in commenting on this, said (page 47): "If there is one question more than another, in our system of self-government, which arouses the interest of the citizen, it is that of the imposition of taxes; it comes home to and directly affects all classes; they will bear with equanimity high taxation for any reasonable governmental purpose; they will not submit to unjust taxation for any purpose. . . . The moment taxes within the territorial limits of a county are not uniform on the same class of subjects, the non-uniformity results in injustice to the taxpayer whose valuation is placed above that of his neighbor. . . . His one and only remedy against unjust and discriminating taxation is the one pointed out by the acts of assembly (1889 and June 26, 1901, P. L. 601) referred to. And we must say that the legislature, in view of the absolute necessity of prompt payment, as well as the dissatisfaction and irritation caused by want of uniformity, was moved to make the remedy as ample as possible by allowance of these appeals."

It is apparent, we think, from this, or even apart from it, that any inequality of taxation resulting from an assessment in an intermediate year is quite as unjust and as distressing to the taxpayer as that which might result from an inequality in a triennial assessment, and if, as the Supreme Court said, the legislature was moved to make the remedy as ample as possible by allowance of these appeals, it would be most inconsistent to hold that, while they were making it as ample as possible, they, nevertheless, restricted the remedy to the triennial assessments. Certainly it cannot be said that that would be making the remedy as ample as possible.

Meinig *v*. Miller et al., County Commissioners.

The act itself does not at any time mention triennial assessments, but makes the act applicable to *any future* assessment; and the act being a remedial one, it should receive a liberal construction, and we feel that it applies to the case in hand. If so, our second conclusion of law necessarily follows from the findings of fact, the learned counsel for the appellee stating in his argument that his view of the law in this regard was the same as that of the learned counsel for the appellant.

An examination of the evidence in this case will show, we think, that there is ample testimony to sustain the court's findings of fact. The testimony in regard to the market value of the land varied, as was to be expected. The witnesses for the appellant placed the value at. from $50,000 to $100,000. Those for the appellee placed it at from $100,000 to $135,000. The court believes that the figure fixed by him of $100,000, which was that given by the assessor himself, is a substantially correct one.

As regards the ratio of assessment, the evidence places it at from 30 to 60 per cent., and we believe that the figure of 50 per cent. is also a fair one. From these figures and from the rule that uniformity of assessment is the controlling element, and not the market value, we feel that the assessment of the appellant's property should be reduced from $100,000 to $50,000.

And now, Oct. 11, 1923, the appeal in this case is sustained, and it is ordered and decreed that the assessment of the property of E. Richard Meinig for the year 1923 shall be reduced from the sum of $100,000 to the sum of $50,000; the costs of this appeal to be paid by the County of Berks.

From Wellington M. Bertolet, Reading, Pa.