Jenner Township Annexation Case.

Argued April 12, 1966. Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*Archibald M. Matthews*, with him *Robert W. Critchfield*, for appellants.

*Charles H. Coffroth*, with him *Joseph N. Cascio, Robert I. Boose*, and *Fike, Cascio and Boose*, for appellees.

OPINION BY ERVIN, P. J., June 17, 1966:

This case involves one major and two subordinate issues. The annexation petition to the borough council specifically stated that it was filed pursuant to art. IV, §425 of The Borough Code (Act of May 4, 1927, P. L. 519, 53 PS §45425), and the proceedings followed the requirements of that act. The appellants contend that these provisions were repealed by implication by the Act of July 20, 1953, P. L. 550, 53 PS §67501 et seq., and that therefore the annexation ordinance was invalid.

The question of whether the Act of 1953 repealed by implication other statutory provisions regarding annexation of territory has been raised in three cases before the Supreme Court[1] and in one case before this Court,[2] but each case was decided on other grounds and the present question was left unresolved. However, in this case (and in *Gallitzin Township Annexation Case*, 208 Pa. Superior Ct. 70, 220 A. 2d 164, decided concurrently herewith) the question is squarely raised and must be decided.

Since this case arose in the court below by an appeal from the enactment of an ordinance and since §1010 of The Borough Code, 53 PS §46010, provides

[1] *West Conshohocken Borough Appeal*, 405 Pa. 150, 173 A. 2d 461; *Carnegie Borough Annexation Case*, 408 Pa. 146, 182 A. 2d 527; *Palmer Township Annexation Case*, 416 Pa. 163, 204 A. 2d 760.

[2] *West Mead Township Annexation Case*, 206 Pa. Superior Ct. 166, 213 A. 2d 124.

that the decision of the court of quarter sessions shall be conclusive, our review is by narrow certiorari only and our inquiry is limited to a determination of whether the court below had jurisdiction, whether the proceedings were regular, whether the court below exceeded its power and authority and whether there was a violation of constitutional rights: *Badali v. Hartman,* 410 Pa. 652, 190 A. 2d 301.

We start with the general principle that the repeal of a statute by implication is not favored and that there must be an irreconcilable repugnancy between the two acts before it can be held that the second statute repealed the former by implication and that in such a situation the question is exclusively one of legislative intent: *Kelly v. Phila.,* 382 Pa. 459, 115 A. 2d 238; *George v. Moore,* 394 Pa. 419, 147 A. 2d 148; *First National Bank of Millville v. Horwatt,* 192 Pa. Superior Ct. 581, 162 A. 2d 60.

In *Parisi v. Phila. Zoning Board of Adjustment,* 393 Pa. 458, 143 A. 2d 360, it was said, at page 462: "The Board's contention is confronted by the further barrier that implied repeals are not favored by the law: Scott v. Bell, 344 Pa. 243, 246, 25 A. 2d 308, and H. C. Frick Coke Company Appeal, 352 Pa. 269, 274, 42 A. 2d 532. Of course, that does not mean that the additional obstacle cited is insurmountable in all instances. There may, indeed, be an implied repeal of a legislative enactment. But it can arise only where the language used in the later statute necessarily discloses an irreconcilable repugnancy between its provisions and those of the earlier statute so inconsistent as not to admit of any fair consonant construction of the two. In Scott v. Bell, supra, we quoted with approval from Endlich on Interpretation of Statutes, §210, as follows: ' "In order to give an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it the effect of repealing it, the impli-

cation of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law, so positive as to be irreconcilable by any fair, strict or liberal, construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving, at the same time, the force of the earlier law, and construing both together in harmony with the whole course of legislation upon the subject." ' "

The Borough Code, §§425 and 426, 53 PS §§45425-45426, provides for annexation by ordinance upon petition signed by a majority in number of the freeholders of the territory to be annexed. The ordinance, once adopted, is to be filed with the court of quarter sessions, together with a description and a plot of the borough both before and after the proposed annexation. Notice of filing is to be filed in the office of the board of elections.

The procedure under the Act of 1953, P. L. 550, 53 PS §§67501-67508, is more complex. The first step is presentation to the borough of a petition signed by a majority of the freeholders in the territory involved requesting annexation, accompanied by a fee of $150 and a certification that, prior to the presentation to the borough, a copy of the petition, without signatures, was filed with the supervisors of the township concerned. The petition is then submitted for approval of the council (presumably by ordinance) and certified to the court of quarter sessions. If no aggrieved person, within 30 days of the certification to the court, files a complaint asking for the appointment of a board of commissioners, the court determines if the proceedings were legal and the annexation proper. If it is satisfied, it affirms the annexation. If a complaint is made, however, the court, after making the same review of legality and propriety and being satisfied of both, must ap-

point a board of three commissioners to study the facts. The board is to report back to the court within 60 days, whereupon the court considers its findings and either dismisses the proceeding or affirms the annexation. If affirmed, the annexation becomes effective immediately (with a minor nonrelevant exception).

We do not believe that the two acts are irreconcilably repugnant, particularly in the light of the Act of May 18, 1933, P. L. 818, amending §1010 of The Borough Code by giving the court the right to consider the propriety of the ordinance as well as the legality thereof.

The legislature has never been consistent in its treatment of annexation. Mr. Justice COHEN in his opinion in *Palmer Township Annexation Case*, 416 Pa. 163, 204 A. 2d 760, summarized many of the statutes which have dealt with the subject. The various acts which were in force in 1950 are set forth in an excellent article in 11 Pitts. L. R. 446,[3] and it was pointed out in that article, at page 460: "As the statutes exist on the books today, they are exceedingly complex and varied. In their placement, some laws are set out in the codes of the annexing communities, while others are in the codes of the community being annexed. But aside from their location in the statute books, the particulars of the statutes are diverse without apparent reason. To constitute one a requisite signer of a petition for annexation, he must at times, depending upon the statute covering the particular situation, be a 'freeholder,' a 'taxable inhabitant,' a 'qualified elector,' or a 'qualified registered voter.' And the various percentages required to make the petition legal include 5%, 10%, 20%, 60%, 66 2/3%, 80% and of course in some cases a simple majority of one or more of the categories of signers set out above."

---

[3] Annexation by Units of Local Government—The Pennsylvania Problem, by Herbert N. Rosenberg and Donald I. Moritz.

While the effect of the Act of 1953 has not been resolved, the same question has arisen in connection with similar acts in the past. In *Plymouth Borough-Plymouth Township's Appeal,* 167 Pa. 612, 31 A. 933, proceedings were commenced to annex a portion of Plymouth Township, Luzerne County, to Plymouth Borough under the Act of April 3, 1851, P. L. 320, §30, the provisions of which were very similar to those of The Borough Code. In that case the appellants contended that the Act of 1851 was repealed by implication by the Act of June 11, 1879, P. L. 150, and by the Act of May 17, 1883, P. L. 36, the provisions of which were very similar to those of the Act of 1953. The Supreme Court dismissed that contention in two sentences. It said: "There was no error in holding that the 30th section of the act of 1851, under which this proceeding was had, was not repealed by the acts of 1879 and 1883. They may well stand together."

The same situation arose in *Snyder's Appeal,* 302 Pa. 259, 153 A. 436. There it was held that the Act of April 28, 1903, P. L. 332 (which was similar to the Act of 1953), did not repeal by implication the Act of June 8, 1874, P. L. 279 (which was similar to The Borough Code). This time the Court set forth its reasons. It said: "If the Act of 1903, supra, is to be held exclusive, it must be determined that it impliedly repealed the Act of 1874, supra,—a legal conclusion not favored, and reached only when necessity imperatively requires it: Com. ex rel. v. Ruggles, 280 Pa. 568. The respective plans for securing annexation, provided by the two statutes in question, are different both in the manner of instituting the proceeding and in the steps to be followed thereafter. Under the later legislation, a vote is directed to be had if the regularity of the acts taken to secure the joinder is preliminarily approved by the court,—a requirement not appearing in the Act of 1874. Legislation of this character might properly di-

rect that the voters of the entire township be given opportunity to express their assent or dissent, since the question of the removal of assessable property from the municipal limits affects them all, but the legislature has not so stipulated either by the Act of 1874 or 1903. Even under the latter statute, as already noticed, only those residing in the part to be annexed are given the right to decide after the submission of the question of separation from the township is ordered by the court. Other differences in the acts are found in the determination of the number of those who may institute the proceeding, and dissimilarities appear as well in the steps to be taken thereafter.

"A subsequent act of assembly, evidently intended as a revision of the whole subject-matter of prior legislation, and a substitute therefor, though it contains no express words so declaring, must, on general principles of law as well as in reason and common sense, operate to set aside the former: Com. v. Curry, 285 Pa. 289; Jefferson Co. v. Rose Twp., 283 Pa. 126. If the new statute indicates a purpose to revise and abolish that formerly in force, although no language to that effect is found therein, the first is repealed: Murdoch v. Biery, 269 Pa. 577; Hammond v. Aluminum Co., 261 Pa. 370. But the purpose to formulate an entirely new system in place of the one theretofore existing must clearly appear before earlier legislation, dealing with the like subject, can be declared to be no longer operative: Graham v. Phila., 288 Pa. 152; Sheraden Boro.'s Case, 34 Pa. Superior Ct. 639. A comparison of the two acts now in question fails to show an intention to supplant that of 1874 by the one passed in 1903, which provides a different and alternative method of procedure, without express repeal of the former by the latter, and we cannot say that it impliedly has that effect." See also *Sheraden Borough,* 34 Pa. Superior Ct. 639, where we held that the Act of April 28, 1903,

P. L. 332, did not repeal by implication the Act of May 10, 1871, P. L. 718. We said: "Applying these general rules to the acts in question and comparing them the one with the other, we do not find, upon such a comparison, that there is such repugnancy the one to the other as to require us to declare that the special act is necessarily repealed by implication by the general and later one. It is true that they cover the same subject. The object to be attained by each is the same. But there is no reason why either the one or the other may not be pursued, in order to reach the definite object in view. The specific provisions of the two acts are not entirely similar, nor is it necessary that they should be. They are not repugnant. There is no antagonism between their provisions, and in such a case there is no necessarily implied repeal."

We feel that the present situation is controlled by the foregoing cases. If we were to have any doubt on the subject, it would be dispelled by the fact that at its last session the legislature enacted a new Borough Code (Act No. 581 of the 1965 session, effective January 1, 1966) in which §§425 and 426 renumbered 426 and 427) of the Code of 1927 are re-enacted almost verbatim. This is most surely an indication that the legislature did not intend the Act of July 20, 1953, P. L. 550, to act as an implied repeal of the provisions of the old Borough Code, and especially §§425 and 426 thereof. See *Harr v. Boucher*, 142 Pa. Superior Ct. 114, 15 A. 2d 699.

We are well aware that in *Hazle Township Annexation Case*, 183 Pa. Superior Ct. 212, 130 A. 2d 230, we said: "The character and scope of an appeal from an annexation ordinance have been changed and enlarged by the Act of 1953. Before it was enacted the proceedings in a case such as this would arise by an appeal from the annexation ordinance. The Borough Code, regulating an appeal from an annexation ordinance,

expressly provided that *'the determination and order of the court thereon shall be conclusive.'* (Emphasis added)" and that in *Lancaster Annexation Case,* 183 Pa. Superior Ct. 618, 132 A. 2d 743, we said: "The proceedings arose under the Act of 1953, July 20, P. L. 550, 53 PS §§67501-67508. Before the enactment of this statute, annexations to third class cities were governed by §§501 to 505 of The Third Class City Code, 53 PS §§35501-35505." These were correct statements but they did not go so far as to say that former practice was no longer available. To remove any doubt we now expressly hold that the Act of July 20, 1953, P. L. 550, did not repeal by implication §§425 and 426 of The Borough Code of May 4, 1927, P. L. 515.

The appellants also contend that the annexation petition was not signed by the requisite number of persons and that the annexation ordinance did not serve the public interest. These questions were for the court below and since The Borough Code provided that its decision was conclusive, our review is limited to ascertaining whether there is any evidence to support its findings: *West Mead Township Annexation Case,* supra. An examination of the record and the opinion of Judge LANSBERRY showed that he gave thoughtful consideration to all the factors involved. There was ample evidence to support the determination of the court below and it did not abuse its discretion in concluding that this annexation was in the public interest.

Order affirmed.