399 A.2d 374

CEDARBROOK REALTY, INC. and John W. Merriam and Thomas Wynne, Inc., t/a Cedarbrook Joint Venture, Appellants,

v.

Charles F. NAHILL, Jr., Tax Collector of Cheltenham Township, School District of Cheltenham Township, Montgomery County, Cheltenham Township, Montgomery County Institution District, Montgomery County Tax Claim Bureau, the Board of Assessment Appeals for Montgomery County, Appellees.

Supreme Court of Pennsylvania.

Argued Nov. 16, 1978.

Decided March 16, 1979.

442

444

Benjamin R. Jones, Jeffrey A. Less, Patrick J. Broderick, Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, for appellants.

Charles Potash, Roger B. Reynolds, Samuel H. High, Jr., Michael D. Marino, Morristown, Clark F. Hess, King of Prussia, G. Alan Kramer, Harrisburg, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellants, Cedarbrook Realty, Inc. and John W. Merriam and Thomas Wynne, Inc., t/a Cedarbrook Joint Venture (hereinafter collectively referred to as "Cedarbrook" or

"taxpayer"), timely received its real estate billings from Appellees, School District of Cheltenham Township, Montgomery County, Cheltenham Township, and Montgomery County Institution District in 1977. The aggregate asserted tax liability of Cedarbrook to these taxing entities was approximately one million, eight hundred thousand dollars ($1,800,000.00). Cedarbrook failed and refused to pay any sums on account of its tax liabilities to any of the taxing districts. In an effort to collect the substantial tax revenues owed by Cedarbrook for 1977, the taxing districts informed Cedarbrook prior to October 7, 1977, that they would order Charles F. Nahill, Jr., the tax collector of Cheltenham Township to begin sequestration of Cedarbrook's rents if Cedarbrook's taxes became delinquent and remained unpaid on November 1, 1977 pursuant to the statutory authority vested in that official by Section 19 of the Local Tax Collection Law of 1945, Act of May 25, P.L. 1050 § 19, 72 P.S. 5511.19 [1]. On October 7, 1977, Cedarbrook began an action in equity in the Court of Common Pleas of Montgomery County seeking to restrain the taxing districts from availing themselves of the statutorily granted rent sequestration remedy. The requested injunctive relief was denied by the Court of Common Pleas of Montgomery County and that ruling was sustained on an appeal to the Commonwealth Court. *Cedar-*

---

**1.** This section provides:

> In case any person who is the owner of real estate neglects or refuses to pay any tax levied against such real property, the tax collector of such taxes may any time thereafter notify in writing the tenant in possession of any such real property, that the owner thereof has failed to pay such tax, and request the payment of such tax together with any penalties and interest due thereon by such tenant out of any rent money then due and owing, or thereafter to become due and owing to such delinquent taxpayer. Upon receipt of such notice from the tax collector, the tenant in possession of any such real property shall deduct from any rent that is then, or may thereafter become due and owing to such delinquent owner, the amount of such delinquent tax and the penalties and interest due thereon, and pay the same over to the collector of such taxes. The proper receipt for such taxes and penalties and interest, if any, paid to the tax collector by any tenant shall be a good and sufficient voucher to offset any claim that such delinquent taxpayer may have against such tenant for any rent to the amount thereof.

*brook Realty, Inc., et al. v. Nahill et al.*, 35 Pa.Cmwlth. 352, 387 A.2d 127 (1978). Because of the importance of the questions raised in this action, this Court granted Cedarbrook's Petition for Allowance of Appeal, but denied its request for a continuation of the Stay pending the disposition of this Appeal. For the reasons that follow, we now affirm the Order of the Commonwealth Court.

Cedarbrook asserts that the Chancellor was incorrect in denying the requested injunctive relief arguing that Section 19 is unconstitutional in that it deprives the taxpayer of procedural due process by not providing for a hearing prior to (or after) seizure of the taxpayer's property and in the alternative that Section 19 was impliedly repealed by the provisions of the Real Estate Tax Sale Law of 1947. Act of July 7, 1947, P.L. 1368, No. 542, art. I; § 101, *et seq.*; 72 P.S. 5860.101, *et seq.*

Normally, equity has no jurisdiction to restrain the collection of taxes and the parties should be made to seek the statutorily prescribed remedies. *Rochester and Pittsburgh Coal Co. v. Indiana County Board of Assessment and Revision of Taxes*, 438 Pa. 506, 266 A.2d 78 (1970). Where there is a challenge that the statutory remedy does not meet the mandate of due process, as is the case here, the claim is in essence an assertion of the inadequacy of the statutorily prescribed remedy and equitable intervention for the consideration of such a complaint is obviously appropriate.[2] Thus, the Chancellor properly entertained the challenge and it

2. There has been disagreement among the members of this Court as to when a constitutional challenge should require an exception to the general rule that the statutory remedy at law should be followed. *See Borough of Green Tree v. Board of Property Assessment*, 459 Pa. 268, 328 A.2d 819 (1974) (and cases cited therein). Under either view, equity has jurisdiction where the adequacy of the remedy is the basis of the complaint. The implied repeal of Section 19 argument would pose a more difficult question. However, that question is avoided in this action, in view of the well recognized principle that once equity properly has jurisdiction, it may, in the interest of avoiding multiplicity of actions, dispose of all issues in the suit. *Wortex Mills, Inc. v. Textile Workers Union of America*, 380 Pa. 3, 11–14, 109 A.2d 815 (1954); *Hurst v. Brennen (No. 1)*, 239 Pa. 216, 223, 86 A. 778 (1913).

would have been appropriate to have given relief if the taxpayer had sustained the due process complaint. We must now consider the Chancellor's determination that Cedarbrook failed to justify the issuance of a preliminary injunction.

■ When an individual is deprived of property by governmental action, he must be afforded at some point in the proceeding an opportunity to be heard. The point at which this hearing must take place, however, varies with the circumstances. Earlier decisions of the United States Supreme Court clearly approved of tax collection procedures that only provided an opportunity for a hearing through a subsequent suit for redress.[3] In *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931), Mr. Justice Brandeis, writing for the Court, noted that the right of the government to collect its internal revenue by summary administrative proceedings "has long been settled". *Id.* at 595, 51 S.Ct. 608.

> Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. Compare *Cheatham v. United States*, 92 U.S. 85, 88–89, 23 L.Ed. 561; *Springer v. United States*, 102 U.S. 586, 594, 26 L.Ed. 253; *Hagar v. Reclamation District No. 108*, 111 U.S. 701, 708–709, 4 S.Ct. 663, 28 L.Ed. 569. Property rights must yield provisionally to governmental need. Thus, while protection of life and liberty from administrative action alleged to be illegal may be obtained promptly by the writ of habeas corpus, *United States v. Woo Jan*, 245 U.S. 552, 38 S.Ct. 207, 62 L.Ed. 466; *Ng Fung Ho v. White*, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938,

---

3. Under the statutory provisions herein concerned, Cedarbrook had the right to appeal the tax liability assessed for the year 1977, and in the event of a favorable decision an appropriate refund would be made. Act of May 22, 1933, P.L. 853, art. V, § 518.1, as amended, 72 P.S. § 5020–518.1 (The General County Assessment Law; Act of June 26, 1931, P.L. 1379, § 9; as amended 72 P.S. § 5350. This is the Third Class County Assessment Law).

the statutory prohibition of any "suit for the purpose of restraining the assessment or collection of any tax" postpones redress for the alleged invasion of property rights if the exaction is made under color of their offices by revenue officers charged with the general authority to assess and collect the revenue. *Snyder v. Marks*, 109 U.S. 189, 3 S.Ct. 157, 27 L.Ed. 901; *Dodge v. Osborn*, 240 U.S. 118, 36 S.Ct. 275, 60 L.Ed. 557; *Graham v. du Pont*, 262 U.S. 234, 43 S.Ct. 567, 67 L.Ed. 965. This prohibition of injunctive relief is applicable in the case of summary proceedings against a transferee. Act of May 29, 1928, c. 852, § 604, 45 Stat. 791, 873. Proceedings more summary in character than that provided in § 280, and involving less directly the obligation of the taxpayer, were sustained in *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 15 L.Ed. 372. It is urged that the decision in the *Murray* case was based upon the peculiar relationship of a collector of revenue to his government. The underlying principle in that case was not such relation, but the need of the government promptly to secure its revenues. *Id.* at 595–96, 51 S.Ct. at 611 (Footnote omitted).

In *Nickey v. Mississippi*, 292 U.S. 393, 396, 54 S.Ct. 743, 744, 78 L.Ed. 1323 (1934) the Court stated:

There is no constitutional command that notice of the assessment of a tax, and opportunity to contest it, must be given in advance of the assessment. It is enough that all available defenses may be presented to a competent tribunal before exaction of the tax and before the command of the state to pay it becomes final and irrevocable. *Wells, Fargo & Co. v. Nevada*, 248 U.S. 165, 39 S.Ct. 62, 63 L.Ed. 190; *Bristol v. Washington County*, 177 U.S. 133, 146, 20 S.Ct. 746, 44 L.Ed. 701; *McMillen v. Anderson*, 95 U.S. 37, 23 L.Ed. 335; see *American Surety Co. v. Baldwin*, 287 U.S. 156, 168, 53 S.Ct. 98, 77 L.Ed. 231.

The classic rationale in tax collection cases was announced by Mr. Justice ROBERTS in *Bull v. United States*, 295 U.S. 247, 259–60, 55 S.Ct. 695, 699, 700, 79 L.Ed. 1421 (1935):

A tax is an exaction by the sovereign, and necessarily the sovereign has an enforcible claim against every one within the taxable class for the amount lawfully due from him. The statute prescribes the rule of taxation. Some machinery must be provided for applying the rule to the facts in each taxpayer's case, in order to ascertain the amount due. The chosen instrumentality for the purpose is an administrative agency whose action is called an assessment. The assessment may be a valuation of property subject to taxation which valuation is to be multiplied by the statutory rate to ascertain the amount of tax. Or it may include the calculation and fix the amount of tax payable, and assessments of federal estate and income taxes are of this type. Once the tax is assessed the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. Default in meeting the obligation calls for some procedure whereby payment can be enforced. The statute might remit the Government to an action at law wherein the taxpayer could offer such defense as he had. A judgment against him might be collected by the levy of an execution. *But taxes are the life-blood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection. The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt.*

In recognition of the fact that erroneous determinations and assessments will inevitably occur, the statutes, in a spirit of fairness, invariably afford the taxpayer an opportunity at some stage to have mistakes rectified. Often an administrative hearing is afforded before the assessment becomes final; or administrative machinery is provided whereby an erroneous collection may be refunded; in some instances both administrative relief and redress by an action against the sovereign in one of its courts are permitted methods of restitution of excessive or illegal exaction. *Thus the usual procedure for the recovery of*

*debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer. The assessment supersedes the pleading, proof and judgment necessary in an action at law, and has the force of such a judgment. The ordinary defendant stands in judgment only after a hearing. The taxpayer often is afforded his hearing after judgment and after payment, and his only redress for unjust administrative action is the right to claim restitution. But these reversals of the normal process of collecting a claim cannot obscure the fact that after all what is being accomplished is the recovery of a just debt owed the sovereign.*

[Emphasis added].

In the more recent United States Supreme Court decisions concerning the procedural due process requirement where a deprivation of the property of the individual was involved, the Court has become more critical of procedures that provide only for redress through subsequent suits. *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *North Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). This new view of the mandate of due process has at least, in part, resulted from the rejection of the position that property rights are entitled to less constitutional protection than personal rights.

Such difficulties indicate that the dichotomy between personal liberties and property rights is a false one. Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a 'personal' right, whether the 'property' in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal

right to liberty and the personal right in property. Neither could have meaning without the other. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424 (1972).[4]

While the recent decisions in the due process area have not reached the point of prohibiting procedures where redress can only be obtained in subsequent suits, they have made clear that where the governmental action does not serve a particularly urgent need an individual deprived of his property is entitled to more than the availability of a subsequent suit for redress. *See, e. g., Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Appellee has appropriately noted that many of these recent decisions involved state remedies providing for the resolution of private disputes. *See, e. g., North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Board of Regents v. Rott,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). We have been cautioned that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *See also Matthews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the

4. In this case the Court rejected the District Court's distinction between personal liberties and proprietary rights with respect to jurisdiction under 28 U.S.C. § 1343(3).

same kind of procedure.  *Morrissey v. Brewer, supra* at 481, 92 S.Ct. at 2600.

Even with the expanded perception of the requirements of procedural due process, the Court has nonetheless recognized the right of the government to seize property without affording the property owner a predeprivation or prompt postdeprivation hearing where the governmental interest involved is particularly urgent.  See *Colero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (seizure of yacht carrying contraband); *Ewing v. Mytinger & Asselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (misbranded drugs);  *Coffin Bros. & Co. v. Bennett*, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 49 (1928) (bank failure);  *Stoehr v. Wallace*, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604 (1921) (a wartime emergency);  *North Am. Cold Storage Co. v. City of Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (a contagion that has threatened the public).  This is particularly significant in view of the traditionally accepted importance of the tax collection process to the perpetuation and the continuing vitality of government. Supportive of the fact that the summary process may still be resorted to in the tax collection process was the relatively recent affirmance of the *Phillips* decision in *Fuentes v. Shevin, supra* at 92, 92 S.Ct. 1983 n. 24.

Cedarbrook argues that *Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), compels us to find that due process now requires, even in tax collection matters, a predeprivation or at least a prompt postdeprivation hearing.  Their reliance is placed upon the following language in that opinion:

> This Court has recently and repeatedly held that, at least where irreparable injury may result from a deprivation of property pending final adjudication of the rights of the parties, the Due Process Clause requires that the party whose property is taken be given an opportunity for some kind of predeprivation or prompt post-deprivation hearing

at which some showing of the probable validity of the deprivation must be made.

> *Commissioner of Internal Revenue v. Shapiro, supra* at 629, 96 S.Ct. at 1072 (Footnote omitted).

Further that Court stated:

> Accordingly, neither the holding nor the dicta in *Phillips* support the proposition that the tax collector may constitutionally seize a taxpayer's assets without showing some basis for the seizure under circumstances in which the seizure will injure the taxpayer in a way that cannot be adequately remedied by a Tax Court judgment in his favor. Instead it would appear to be entirely consistent with our more recent holdings. *Id.* at 632, 96 S.Ct. at 1073.[5]

■ Although at first blush the above quoted portions of the *Shapiro* decision would appear to provide impressive authority for Cedarbrook's position, we are not convinced that a careful analysis of that case requires such a result. At the onset, it is significant that the *Shapiro* Court was not squarely confronted with a due process question. As the first paragraph of the decision indicates, the Court was

---

5. We note that the Chancellor found, with some basis on this record, that this taxpayer failed to establish that this procedure would cause it irreparable harm which could not be remedied by the statutory procedures available. This finding in and of itself would justify the refusal to grant the requested equitable intervention.

> [W]e have noted that the Government's interest in collecting the revenues is an important one . . . . This interest is clearly sufficient to justify seizure of a taxpayer's assets without a *pre* seizure hearing . . . . and to remove any need to subject the Commissioner to the burden of an inquiry into the basis for his assessment absent factual allegations [which are sustained] of irreparable injury by the taxpayer.

> *Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614, 630 n.12, 96 S.Ct. 1062, 1072 n.12 (1976).

It is basic law in this jurisdiction that on appeal from the refusal of a preliminary injunction, appellate review is limited to a determination of whether any apparently reasonable grounds existed for the action of the trial court. *Pennsylvania Securities Commission v. Continental Manufacturing Co.*, 465 Pa. 411, 413, 350 A.2d 831 (1976); *Sameric Corp. of Market Street v. Goss*, 448 Pa. 497, 295 A.2d 277 (1972); *Credit Alliance Corporation v. Philadelphia Minit-Man Car Wash Corporation*, 450 Pa. 367, 301 A.2d 816 (1973).

called upon to determine the scope of the Internal Revenue Code's Anti-Injunction Act, 26 U.S.C. § 7421(a).[6] More importantly, the remedy afforded the taxpayer in that case was much more restrictive than the language which Cedarbrook relies upon would suggest. First the Court followed its decision in *Enochs v. Williams Packing Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) and required as a prerequisite for injunctive relief that the taxpayer show extraordinary circumstances causing irreparable harm for which the statutory scheme does not provide an adequate remedy and also demonstrate that under the most liberal view of the law and the facts the government could not establish its claim. The relief provided by the *Shapiro* Court was only to require the government to supply the taxpayer with the basis for the jeopardy assessment and levy.[7] Accepting as we must, that the *Shapiro* Court did not envision due process as providing more protection to the taxpayer than its interpretation of the Anti-Injunction Act would permit,[8] it is clear that where the basis of the tax assessment is known to the taxpayer, as is clearly the case in the instant appeal, the right to injunctive relief is available only if the taxpayer can establish that the taxing authority *could not possibly* prevail in its tax claim.[9]

6. Title 26 U.S.C. § 7421(a) provides in full:
   (a) Tax.—
   Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

7. The opinion suggests that this information *may be supplied* by affidavits and that resort to oral testimony and cross-examination is unnecessary. *Commissioner of Internal Revenue v. Shapiro, supra* 424 U.S. at 633, 96 S.Ct. 1062.

8. "[W]e are satisfied that the standard required by the Anti-Injunction Act is at least as favorable to the taxpayer as that required by the Constitution . . . ."
   *Commissioner of Internal Revenue v. Shapiro, supra* at 633, 96 S.Ct. at 1073.

9. This of course is assuming that the taxpayer has also established the prerequisite irreparable harm.

Here, although the basis for the tax liability is disputed, it is known to the taxpayer. Further, it is apparent that the record at this preliminary stage does not justify a finding that the taxing authorities cannot prevail on their claims. Thus, we cannot agree that *Shapiro* requires a finding that the Chancellor erred in denying preliminary injunctive relief. Further, we do not accept the view that *Shapiro* mandates a blanket disavowal of our prior cases in which we have sustained tax statutes where relief was limited to suits for redress. *See, e. g., Rockhill Iron and Coal Co. v. Fulton Co.*, 204 Pa. 44, 53 A. 530 (1902).

██  Under the circumstances presented in this matter, we are satisfied that the taxpayer's rights are not violated by requiring in the Third Class County Assessment Law that claims be channelled into an administrative hearing process followed ultimately by judicial review. The rationale for this procedure was forcefully delineated by this Court as follows:

> . . . the imperative necessity for prompt payment gives the complaining taxpayer but one remedy, and that is through appeal to the courts from the assessment or valuation. The very law which gives the appeal directs immediate payment, and then refunding the excess collected if the appeal be successful. He cannot resist or delay by litigation the tax collector who attempts to levy what the taxpayer thinks an unjust tax. His one and only remedy against unjust and discriminatory taxation is the one pointed out by the act of the assembly. And we must say that the legislature, in view of the absolute necessity of prompt payment, as well as the dissatisfaction and irritation caused by want of uniformity, was moved to make the remedy as ample as possible by the allowance of these appeals.
>
> *Rockhill Iron and Coal Co. v. Fulton County, supra*, 204 Pa. at 47–48, 53 A. at 531.

The rationality of that legislative judgment is amply vindicated by the experience of municipalities and counties with

defaulting property owners during the great depression [10] as well as by the facts of the instant case in which one of the taxing authorities, the School District, was forced by Cedarbrook's nonpayment to borrow funds and pay interest thereon because of a shortfall in real estate taxes brought about by Cedarbrook's delinquency *and* to raise the millage rate for other taxpayers. Accordingly, we hold that rent sequestration undertaken pursuant to Section 19 of the Local Tax Collection Law of 1945 does not deprive appellant of Due Process where the taxpayer has recourse of payment of taxes under protest and appeal, as well as other enumerated statutory proceedings. *See* 72 P.S. § 5566b; 72 P.S. § 5566c. *See, e. g., Matthews v. Rogers*, 284 U.S. 521, 525–528, 52 S.Ct. 217, 76 L.Ed. 447 (1932); *Aronoff v. Franchise Tax Board*, 348 F.2d 9 (9th Cir. 1965); *Helmsley v. City of Detroit*, 320 F.2d 476 (6th Cir. 1963); *Kimmey v. H. A. Berkeimer*, 376 F.Supp. 49; *aff'd.*, 511 F.2d 1394 (3d Cir. 1975).

▇▇ Cedarbrook further contends that Section 19 of the Local Tax Collection Law of 1945 was impliedly repealed by the provisions of the Real Estate Tax Sale Law of 1947 which does not authorize the remedy of sequestration of rents.[11] Under the Pennsylvania Statutory Construction Act, a latter statute impliedly repeals the former only if it "purports to be a revision of all statutes upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statute"; or "purports to establish a uniform and mandatory system covering a class of subjects" or the two statutes are "irreconcilable". 1 Pa.C.S.A. § 1971. Since the 1947 Act was optional rather than mandatory in that the Tax Claim Bureau which it created became operative as to the county only if the county commissioners elected, by formal resolution, to accept it and

---

10. *See* Symposium, The Collection of Real Property Taxes, 3 *Law and Contemporary Problems*, 335 (1936).

11. Act of July 7, 1947, P.L. 1368, No. 542, art. I, § 101 *et seq.*; 72 P.S. § 5860.101 *et seq.*

in that it became operative as to municipal and school district taxing entities only if they notified the Tax Claim Bureau of a resolution to collect their delinquent taxes under and in accordance with its provision, appellant's claim that the Act "purports to establish a *uniform* and *mandatory* system covering a class of subjects" is without merit. *See* 72 P.S. § 5860.102. In *Tremont Township School District v. Western Anth. Coal Co.*, 364 Pa. 591, 598, 73 A.2d 670, 674 (1950), this Court observed:

> . . . to say that the general Act of 1945 (the Local Tax Collection Law) which contains no local option provision, can be nullified as to certain counties of the state by their local exercise of an option conferred by an entirely different statute (the Real Estate Tax Sale Law) would be to carry repeal by implication to an unheard of extent.

Similarly, the optional nature of county, municipal and school district utilization of the tax collection process set up by the Real Estate Tax Sale Law of 1947 militates against any inference that the legislature intended by its enactment to set up "a general or exclusive system covering the entire subject of the former statute" and to "substitute for such former statute". Additionally, the very title and preamble of the 1947 law indicates that it does not purport to cover the *entire subject* of the 1945 statute.[12]

■ Appellant also contends that the legislature intended repeal of prior statutes which deal with the particular subject of *in rem* collection of delinquent real estate taxes by enactment of the 1947 statute, hence precluding local authorities from availing themselves of the remedy of rent sequestration. This argument is untenable. The collection process envisaged by the Real Estate Tax Sales Law is triggered only when tax claims are delinquent until May of the year following that in which the taxes are due. 72 P.S. § 5860.306. It must therefore follow, even under appellant's

12. The title and preamble of a statute may be considered in the construction of a statute. 1 Pa.C.S.A. § 1924.

theory of the case, that at least until May of the year following that in which the taxes are due, the local tax collector is not pre-empted from taking statutorily authorized steps under the provisions of the Local Tax Enabling Act to collect those taxes. One of those statutorily authorized mechanisms for collection is, of course, summary rent sequestration. 72 P.S. § 5511.19. Otherwise, the legislature would have intended the absurd result that the establishment of a County Tax Claim Bureau to facilitate the collection of delinquent taxes impliedly displaced the local tax collector from all statutorily authorized *in rem* collection devices, rent sequestration included, thus gutting the local tax collector's enforcement powers. There is no evidence of any legislative intent to vest all local tax enforcement functions in the County Tax Bureau which would be the effect of holding that the 1947 statute was a revision of "all statutes" upon the particular subject of *in rem* tax collection. Since, under the facts of the instant case, the local tax collector invoked the rent sequestration remedy at a time before that in which the County Tax Bureau is seized of enforcement jurisdiction, we need not determine whether, in the case of a conflict between the local tax collector and the County Tax Bureau, the latter's jurisdiction would prevail.[13]

Finally appellant contends that the 1945 statute is "irreconcilable" with the 1947 Act in that the prior statute authorizes sequestration by the local tax collector instead of the Bureau; in that it permits sequestration by summary proceedings rather than by judicial proceedings; and in that it would permit sequestration two years before the tax claim becomes absolute and without regard to the taxpayer's right to file exceptions under the 1947 Act. *Compare* 72 P.S. § 5511.19 (Local Tax Collection Law) with 72 P.S. §§ 5860.-311; 5860.314; 5860.401; 5860.402. The term, "irreconcilable" is not defined in the Statutory Construction Act. In

13. Under the provisions of the 1947 Act, the County Tax Bureau must petition for its appointment as sequestrator of rents at the written request of any taxing districts. 72 P.S. § 5860.402.

view of the presumption against implied repeal,[14] it is. authoritatively stated that this presumption may be overcome by a showing that " . . . two acts are irreconcilable, *clearly repugnant as to vital matters to which they relate and so inconsistent that* the two cannot have concurrent operation". 1A Sands, Sutherland on Statutory Construction (4th ed.) § 23.10, p. 231 (1972) (emphasis supplied).[15] As the Court has held in an analogous case, enactment of a new legal remedy does not necessarily imply the repeal of an earlier statutory remedy to enforce the same right since "there is nothing inherently inconsistent in the existence of two district statutory procedures for resolution of the same disputes, even though the result may be a lack of symmetry in the area". *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.*, 461 Pa. 420, 336 A.2d 609 (1975). Appellant has shown that the two statutory schemes are different and may be overlapping. Such a showing does not amount to irreconcilability under Pennsylvania law. *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc., supra; Parisi v. Philadelphia Zoning Board of Adjustment*, 393 Pa. 458, 143 A.2d 360 (1958); *Jenner Twp. Annexation Case*, 208 Pa.Super. 62, 220 A.2d 385 (1966), *aff'd.*, 423 Pa. 609, 225 A.2d 247 (1967).

Accordingly, the Order of the Commonwealth Court affirming the Decree of the Chancellor is affirmed. Appellants to pay all costs.

POMEROY, former J., did not participate in the consideration or decision of this case.

**14.** *McNair v. Allegheny County*, 328 Pa. 3, 195 A. 118 (1937); *Parisi v. Philadelphia Zoning Board of Adjustment*, 393 Pa. 458, 143 A.2d 360 (1958).

**15.** "There may indeed, be an implied repeal of a legislative enactment. But it can arise only where the language used in the later statute necessarily discloses an irreconcilable repugnancy between its provisions and those of the earlier statute so inconsistent as not to admit, of any fair consonant construction of the two." *Parisi v. Philadelphia Zoning Board of Adjustment, supra*, 393 Pa. at 463, 143 A.2d at 363.

ROBERTS, J., filed a concurring opinion.

MANDERINO, J., filed a dissenting opinion.

ROBERTS, Justice, concurring.

I agree with the majority that appellant Cedarbrook is not entitled to equitable relief. I reach this conclusion, however, for entirely different reasons. Cedarbrook had available and took full advantage of the very opportunity to be heard it alleges now, in this proceeding, does not exist. Cedarbrook's constitutional challenge to Section 19 of The Local Tax Collection Law of 1945 [1] is, therefore, without merit. Further, on this record, equitable principles preclude the grant of injunctive relief Cedarbrook seeks.

Cedarbrook admits that it received timely notice of its 1977 real estate assessments and 1977 tax obligations of nearly $2,000,000. Pursuant to the Act of May 22, 1933,[2] Cedarbrook appealed its 1977 assessment to the Montgomery County Board of Assessment in August, 1976. The Board rejected Cedarbrook's claim, and Cedarbrook lodged an appeal from that ruling. Pursuant to Section 518.1 of The General County Assessment Law,[3] a trial de novo was held in the Court of Common Pleas of Montgomery County, and Cedarbrook's claims were again rejected. After the Board's review and rejection of Cedarbrook's request for relief, appellees, local taxing bodies, notified Cedarbrook of their intention to notify Cedarbrook's tenants concerning rents due, pursuant to the provisions of Section 19 of The Local Tax Collection Law.

Although Section 5020–518.1 of The General County Assessment Law specifically provides "[t]hat the appeal shall not prevent the collection of taxes complained of, but in case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same," Cedarbrook deliberately withheld payment of its 1977 taxes.

1. Act of May 25, 1945, P.L. 1050, 72 P.S. § 5511.19.

2. Act of May 22, 1933, P.L. 853, art. V, § 517, 72 P.S. § 5020–517.

3. 72 P.S. § 5020–518.1.

Instead Cedarbrook sought to postpone payment of its 1977 taxes by withholding payments and seeking an injunction against the taxing bodies' recourse to enforcement procedures for the collection of delinquent tax obligations in accordance with The Act of 1945.

Since Section 5020–518.1 of The General County Assessment Law provides taxpayers ample opportunity to be heard on their objections both to assessments and taxes before there can be any recourse to the remedy provided in 72 P.S. § 5511.19 for the collection of delinquent taxes, Cedarbrook's constitutional claim is misguided and there is no need to address it.[4] Under any analysis of due process rights, this statutory scheme provides all taxpayers, individual and corporate, full opportunity to be heard.

Cedarbrook's delaying posture and the extraordinary supersedeas of enforcement proceedings granted Cedarbrook by a majority of this Court on November 22, 1977,[5] after Commonwealth Court refused to stay appellees collection of delinquent taxes and before any decision in Commonwealth Court or a fortiori, a petition seeking allowance of appeal had been filed, required appellees to meet their governmental obligations with funds borrowed on the open market. Indeed, Cedarbrook's failure to pay its taxes has had a substantial adverse financial impact on appellees and the taxpayers. Cedarbrook's taxable real estate holdings comprise nearly ten per cent of appellees' tax base.[6] Equitable principles require that those who seek the protection of the Chancellor must themselves act in good faith. In light of

4. 72 P.S. § 5020–517 requires appeals before the Board of Assessment be heard before the payment of any tax and 72 P.S. § 5511.19 is not available until taxes are delinquent. Thus, the law provides for an opportunity for a full hearing before taxes become delinquent.

5. This writer and former Justice Packel dissented from the majority's grant of the stay.

6. Cedarbrook's tenants, by a provision of their leases, are responsible for taxes as well as rents, and have already paid to Cedarbrook the taxes Cedarbrook continues to withhold from the taxing bodies. It should be noted, in addition, that according to appellees' brief, after Cedarbrook withheld its taxes, authorities were forced to raise taxes by 10 mills.

Cedarbrook's deliberate decision to disregard the express notice in The General County Assessment Law that the taking of an appeal to the court of common pleas in no way stays appellant's tax obligations, it must be concluded that Cedarbrook is estopped from obtaining injunctive relief, and is otherwise precluded from further delaying appellees' prompt collection of delinquent taxes.

The trial court in full and complete accord with the applicable legal and equitable principles and in the exercise of its sound discretion properly denied the injunctive relief Cedarbrook requested. To have granted that relief would have constituted a flagrant abuse of discretion and error of law.

The record clearly demonstrates that all costs of these proceedings should be imposed upon Cedarbrook.

MANDERINO, Justice, dissenting.

I must dissent. The provisions of the rent sequestration act, 72 P.S. § 5511.19, are unconstitutional. While the majority pays lip service to the principle that property rights are not entitled to less constitutional protection than personal rights, it nonetheless concludes that a statute which fails to provide for a prior hearing or a prompt post-seizure hearing passes constitutional muster. This conclusion is misguided. In the absence of a compelling state interest, a hearing should precede a governmental decision adversely affecting one's property. *Fuentes v. Shevin*, 407 U.S. 67, 93 S.Ct. 1983, 32 L.Ed. 556 (1922); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fahey v. Mallonee*, 322 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947). The majority however seems to suggest that the traditional importance of the tax collection procedures in this case rises to the level of a compelling state interest and therefore justifies seizing appellant's property without a hearing. The United States Supreme Court, however, recognizes that this issue is not so easily resolved in favor of the government:

"Our conclusion that the Court of Appeals correctly reversed the judgment of the District Court and remanded for further proceedings is fortified by the fact that construing the [Anti-Injunction] Act to permit the Government to seize and hold property on the mere good-faith allegation of an unpaid tax would raise serious constitutional problems in cases, such as this one, where it is asserted that seizure of assets pursuant to a jeopardy assessment is causing irreparable injury. This Court has recently and repeatedly held that, at least where irreparable injury may result from a deprivation of property pending final adjudication of the rights of the parties, the Due Process Clause requires that the party whose property is taken be given an opportunity for some kind of predeprivation or prompt post-deprivation hearing at which some showing of the probable validity of the deprivation must be made.[11]

[11] *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (temporary deprivation of welfare payments may deprive recipient of 'the very means by which to live while he waits'); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 341–342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (temporary deprivation of wages may 'drive a wage-earning family to the wall'); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 608, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) ('probability of irreparable injury' sufficient to warrant preseizure probable-validity hearing); see also *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (incarceration must be preceded by probable-cause hearing); cf. *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 156, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) (no probable-cause hearing required where complainant eventually will be 'made whole' for any inadequacy in compensation for confiscated property)."

*Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614, 629, 96 S.Ct. 1062, 1075, 47 L.Ed.2d 278, 291 (1976).

The majority attempts to distinguish the above-quoted language from *Shapiro* because "it is clear" that appellant, the taxpayer, knew the basis of the tax assessment, and that the "right to injunctive relief is available only if the taxpayer can establish that the taxing authority *could not possibly* prevail in its tax claim." (p. 381). What concerns me is the majority's complete disregard of the balancing test which takes into account the individual and governmental interests involved when an allegation of procedural due process is

made. In this case, the individual interest is considerable. Appellant asserts that without the rental income, payments for utilities and other essential services cannot be made. Appellant also alleges that the irreparable injury to its goodwill will result through the loss of existing and prospective tenants. Furthermore, appellant claims that the remedy available to it in a subsequent suit is totally inadequate. This analysis is missing from the majority's opinion.

Additionally, I must reject the majority's acceptance of appellee's contention that appellant's rights were protected because it received a hearing before the Court of Common Pleas. Whatever due process was afforded to appellant when it petitioned the court for a hearing did not arise from the application of the rent sequestration act. Rather, appellant petitioned the court to use its injunctive powers in a collateral proceeding. Yet, the majority justifies the application of a narrow scope of review because appellant seeks to obtain on its own the process which it cannot otherwise seek under the act. Such a Catch 22 situation cannot be said to meet even the minimum standards of due process.

As the provisions of 72 P.S. § 5511.19 fall short of providing appellant the process that is due, I must dissent.